**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SEAN P. HILGENDORF**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DONALD E. WROBEL,                )
                                 )
    Appellant-Defendant,         )
                                 )
        vs.                   )    No.  71A05-1204-CR-180
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable William T. Means, Judge
Cause No. 71D04-0006-CF-252

**August 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Donald E. Wrobel appeals the sentence imposed after he pleaded guilty to two counts of Sexual Misconduct with a Minor,[1] each as a class B felony, and to being a Habitual Offender.[2] Specifically, Wrobel argues that his thirty-year aggregate sentence is inappropriate in light of the nature of his offenses and his character. Concluding that Wrobel's sentence was not inappropriate, we affirm the judgment of the trial court.

FACTS

In May 2000, Wrobel was working as a maintenance man for the YMCA in St. Joseph County when he first met S.P., a fourteen-year-old boy with autism. During the next two months, Wrobel had several encounters with S.P. at the YMCA during which he reports that he observed S.P. naked while S.P. weighed himself, observed S.P. watch a father and son change clothes, and witnessed S.P. masturbate near the YMCA's Jacuzzi. On more than one occasion, Wrobel permitted S.P. to stay after hours at the YMCA and to gain access to areas in the YMCA where S.P. otherwise would not have been allowed.

On June 12, 2000, after the YMCA had closed, Wrobel engaged in illicit sexual acts with S.P. Specifically, on that date, Wrobel and S.P. engaged in mutual fellatio.

On June 14, 2000, the State charged Wrobel with three counts of criminal deviate conduct as a class B felony and three counts of sexual misconduct with a minor as a class B felony. On August 4, 2000, the State filed a subsequent count to Wrobel's pending

---

[1] Ind. Code § 35-42-4-9(a)(1).

[2] Ind. Code § 35-50-2-8.

charges alleging Wrobel to be a habitual offender. On December 11, 2000, the three counts of criminal deviate conduct were dismissed upon the State's motion.

On June 20, 2001, Wrobel pleaded guilty to two counts of sexual misconduct with a minor and to being a habitual offender. In exchange, the State dismissed the third count of sexual misconduct with a minor and agreed to a twenty-year maximum sentence for each of the two counts of sexual misconduct with a minor, to run concurrently, and for a maximum sentence enhancement of ten years for being a habitual offender. Thus, pursuant to the plea agreement, the maximum executed sentence that Wrobel could receive was thirty years.

During the sentencing hearing held on August 30, 2001, Wrobel argued that he should not receive the maximum sentence permitted under the plea agreement because his prior felony convictions for four counts of conspiracy to use interstate commerce facility in the commission of a murder for hire and for carrying a concealed weapon were used to support the habitual offender charge. Therefore, Wrobel asserted, they could not be considered as aggravating factors to support imposing the maximum sentence for the two counts of sexual misconduct with a minor. Wrobel also argued that his felony convictions did not reveal, as the State claimed, a history of violent crimes because "[n]o one was ever injured." Tr. p. 37. Wrobel's remaining criminal history, he argued, was limited to two class A misdemeanor charges for criminal conversion and for battery (domestic violence) that were "almost ten years old" and which had ultimately been

3

dismissed and thus should not be the basis for imposing the maximum sentence. Id. at 31.

Wrobel's second argument was that although S.P. suffered from autism, he was "not a mentally handicapped person within the definition of what we constitute an aggravating circumstance" because he was able to maintain a regular course load as a sophomore in high school. Id. at 31, 35. Third, Wrobel argued that his own mental illness, on the other hand, should be recognized as a mitigating factor.

Wrobel's fourth argument at the sentencing hearing was that because he had been sixty-five years of age when he committed his first sexual offense, an aggregate sentence of thirty years was unnecessary to ensure that he would not be a threat to the community upon release. Finally, Wrobel argued that the maximum sentence should not be imposed because although S.P. was harmed, he did not appear to have any residual psychological issues that were caused by Wrobel's actions.

In response to Wrobel's sentencing arguments, the State asked S.P.'s father to testify regarding S.P.'s developmental age and behavior. S.P.'s father testified that due to S.P.'s autism and his speech and hearing problems, S.P.'s "emotional and social development are several years behind his physical development." Tr. p. 24. Specifically, S.P.'s father stated that at the time of the incident, S.P. "was probably only about ten years of age socially" and that the "mismatch between his emotional and social development and his physical development is one of the factors that made him vulnerable to this type of incident." Id.

4

Second, the State argued that Wrobel had taken advantage of a position of trust and authority over S.P. and that Wrobel had engaged in "a type of grooming" of S.P. by allowing S.P. special access to the YMCA after hours and in locations where S.P. normally would not have been permitted. Id. at 35. The State also identified the large age disparity between Wrobel and S.P. as a factor that likely contributed to the grooming that occurred. Third, the State argued, presumably in response to Wrobel's argument that his actions left no residual effects on S.P., that the court should consider the fact that S.P. received counseling after the events.

Next, the State argued that the court should consider Wrobel's character in his sentencing. The State mentioned that Wrobel fled from the scene when S.P.'s family arrived at the YMCA to try to locate S.P. on the date of the offense. More particularly, however, the State identified Wrobel's criminal history and lack of remorse as potential aggravating circumstances. Regarding Wrobel's criminal history, the State appeared to argue that Wrobel's past crimes indicated a propensity for violent offenses. The State also argued that the fact that Wrobel continues to violate the law indicates that he has not been deterred from criminal behavior. In support of its argument that Wrobel was not remorseful, the State referred to the Presentence Investigation Report (PSI), in which the State asserted that Wrobel "characterizes himself as the victim[,]" "points the finger at [S.P.] and tries to claim that he was the sexual aggressor[,] and basically calls [S.P.] the criminal, which obviously points toward [Wrobel's] character." Tr. p. 36. In the same report, Wrobel told the interviewing probation officer that he had "blacked out" during

5

the incident and could not remember what happened. Appellant's App. p. 51. The State argued that the way Wrobel "thinks in terms of dealing with problems and in society and with people makes him a danger to this community."[3] Tr. p. 37.

In its sentencing order, the trial court identified Wrobel's prior criminal history as the sole aggravating factor and identified no mitigating factors. The trial court then sentenced Wrobel to twenty years on each of the two counts of sexual misconduct with a minor, to run concurrently pursuant to the plea agreement. The trial court then enhanced Wrobel's sentence by ten years on the habitual offender count, thus resulting in an aggregate sentence of thirty years. He now appeals his sentence.[4]

## DISCUSSION AND DECISION

Wrobel's sole contention on appeal is that his sentence is inappropriate given the nature of his offenses and his character. Indiana Rule of Appellate Procedure 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Moreover, under this rule, the question is not whether another

---

[3] Earlier in the sentencing hearing, there was a discussion about whether Wrobel had voluntarily entered into the plea agreement due to a mental illness that affects his ability to acknowledge how his actions are wrong when he is later confronted with them. The trial court ultimately concluded that Wrobel's guilty plea had been voluntary at the time of the plea hearing, and the voluntariness of the guilty plea is not an issue in Wrobel's appeal.

[4] Although Wrobel was convicted in 2001, his appeal is not untimely. Wrobel was granted leave by the trial court to file a belated appeal because he was not specifically advised of his right to appeal his sentence upon entering into a plea agreement with open sentencing terms. Appellant's App. p. 21–25.

sentence is more appropriate, but whether the sentence imposed is inappropriate. King v. State, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant bears the burden of persuading us that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

At the outset, we note that Wrobel takes issue with the trial court imposing a total executed sentence of thirty years when "the trial court somehow felt as though an enhanced 25 year sentence was initially appropriate." Appellant's Br. p. 5. Although Wrobel attempts to weave this argument into his Rule 7(B) argument, it is in actuality a claim that the trial court abused its discretion in sentencing Wrobel, rather than an argument that Wrobel's sentence is inappropriate in light of the nature of his offenses or his character. Wrobel failed to raise an abuse of discretion claim or identify the standard of review for an abuse of discretion claim in his appellate brief. Accordingly, Wrobel has waived appellate review of this issue. See Marshall v. State, 621 N.E.2d 308, 318 (Ind. 1993) (observing that "[w]ithout citation to legal authority in addition to citation of the record, we cannot determine the merits of the claim and, thus, consider the issue waived").

Waiver notwithstanding, the record shows that the trial court considered the sentences for the sexual misconduct with a minor convictions separately from the sentence enhancement for the habitual offender finding. Regarding the sexual misconduct with a minor convictions, the trial court ultimately decided to impose the maximum sentence authorized under Wrobel's plea agreement, after noting, "I think we

7

have an agreement here that calls for a sentence cap of 20 years in each of these Counts, and I think under all the circumstances that is appropriate." Tr. p. 38. In its sentencing order, the trial court identified Wrobel's prior criminal history as an aggravating factor that supported its decision to impose the maximum sentence. Appellant's App. p. 14. Regarding the habitual offender enhancement, Wrobel pleaded guilty to it and received the minimum sentence enhancement. Id.

Having decided that Wrobel waived appellate review of his abuse of discretion claim and that it is unpersuasive, we will address Wrobel's argument that his sentence was inappropriate in light of the nature of the offense and his character.

## I. Nature of the Offense

Our review of whether a sentence is inappropriate in light of the nature of the offense begins at the statutory advisory sentence. Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). For a class B felony, the advisory sentence is ten years, with a minimum sentence of six years and a maximum sentence of twenty years. I.C. § 35-50-2-5. Upon a finding that a defendant is a habitual offender, a defendant's sentence may be enhanced by "an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense." I.C. § 35-50-2-8(h). There is no advisory enhancement for a habitual offender finding, only the above-specified range. The maximum enhancement is set by statute at thirty years. Id. Thus, pursuant to Wrobel's plea agreement, his minimum sentence would have been six years on each of

8

two counts of sexual misconduct with a minor, to run concurrently, enhanced by ten years for the habitual offender finding, to run consecutively, for a total executed sentence of sixteen years. As explained above, the trial court imposed the maximum sentence permitted under Wrobel's plea agreement, which equaled a total executed sentence of thirty years.

To support his claim that his sentence is inappropriate in light of the nature of the offense, Wrobel argues that "the offense, while serious, was a single incident." Appellant's Br. p. 3. The State counters, as it did in Wrobel's sentencing hearing, by asserting in part that the incidents for which Wrobel was convicted were the culmination of multiple interactions and Wrobel's "grooming" of S.P. Appellee's Br. p. 7; see also Tr. p. 35. Indeed, the record shows that Wrobel had observed S.P. in a sexual manner at the YMCA on more than one occasion, that Wrobel permitted S.P. to stay at the YMCA after it closed on June 12, 2000, and that on that date, Wrobel voluntarily engaged S.P. in a number of illicit sexual acts. Compare Appellant's App. p. 50–51, with Tr. p. 18–19, 35.

The record also shows that S.P. was particularly vulnerable to such an encounter because of the discrepancy between his emotional and social development and his physical development as a result of his autism. Tr. p. 34. Regardless of S.P.'s autism, however, the record shows that he was merely fourteen years old at the time of the incident and that Wrobel, at sixty-five years old and as an employee of the YMCA where the incident took place, was in a position of authority over S.P. Id. at 18–20. Moreover,

9

when parents and guardians send their children to a YMCA, they expect them to be safe, and this is not an unreasonable expectation. Finally, S.P. required counseling after the incident. Id. at 36. Based on these considerations, Wrobel's argument that his sentence is inappropriate in light of the nature of the offense is unconvincing.

## II. Wrobel's Character

Wrobel also argues that his sentence is inappropriate in light of his character. More particularly, Wrobel claims that the sentence is inappropriate because he "had a limited criminal history, suffered from mental illnesses, and accepted responsibility for his actions." Appellant's Br. p. 3.

## A. Limited Criminal History

Regarding Wrobel's claim that his sentence is inappropriate in light of his character because he has a limited criminal history, Wrobel asserts that the trial court improperly took his two prior felony convictions into account as aggravating factors for his sentencing on the two sexual misconduct with a minor convictions when these prior felony convictions were also used as the basis of finding Wrobel to be a habitual offender. Appellant's Br. p. 5–6. It is noted that the trial court did not identify precisely which of Wrobel's prior charges or convictions it was considering to be aggravating factors on its sentencing order. Nevertheless, the trial court was not precluded from considering Wrobel's prior felony convictions in its deliberation of appropriate sentences for Wrobel for the two sexual misconduct with a minor convictions.

10

On the contrary, our Supreme Court has held that since the advisory sentencing scheme was enacted in 2005, "when a trial court uses the same criminal history as an aggravator and as support for a habitual offender finding, it does not constitute impermissible double enhancement of the offender's sentence." Pedraza v. State, 887 N.E.2d 77, 80 (Ind. 2008). Thus, Wrobel's argument that the trial court could not properly consider Wrobel's prior felony convictions as aggravating circumstances justifying his maximum sentences for the two sexual misconduct with a minor convictions fails.

Wrobel further attempts to support his argument that his criminal history is limited and that his sentence is thus inappropriate by arguing that his prior convictions failed to demonstrate "any pattern or violent behavior." Appellant's Br. p. 6. To be sure, the significance of a defendant's criminal history as an aggravating circumstance "varies based on the gravity, nature and number of prior offenses as they relate to the current offense." Wooley v. State, 716 N.E.2d 919, 929 n.4 (Ind. 1999). As noted above, Wrobel's previous felony convictions were for four counts of conspiracy to use interstate commerce facility in the commission of a murder for hire and for carrying a concealed weapon. Tr. p. 20–21; Appellant's App. p. 48–49.

Wrobel is correct in that his prior offenses, at first glance, do not appear to relate to the current offense, insofar as they were not sexual in nature. However, his prior crimes are also not as dissimilar or insignificant as Wrobel claims, and we reject his claims that his prior offenses show no propensity for violence. A conspiracy to murder

11

someone for hire, regardless of whether that person was ultimately harmed, necessarily demonstrates intent to kill another or at the very least acquiescence in an agreement to kill another. See Jester v. State, 724 N.E.2d 235, 239 (Ind. 2000). Wrobel's arrest record shows that he had also once been charged with, though not convicted of, battery. Appellant's App. p. 49. Taken together, this history does not appear to indicate that Wrobel was a peaceable fellow. Moreover, Wrobel's multiple convictions and additional arrests record would seem to reflect poorly on Wrobel's character in that Wrobel has not been reformed by his previous encounters with the criminal justice system. See Weiss v. State, 848 N.E.2d 1070, 1073 (Ind. 2006).

With regard to Wrobel's offenses involving S.P., although Wrobel may not have used physical force to compel S.P.'s acquiescence, Wrobel took advantage of his position of authority over S.P. as well as S.P.'s stunted social development and imposed himself upon S.P. in a sexual manner. Such behavior appears to be consistent with Wrobel's history of violent behavior and disregard for the law.

Because the trial court could properly consider Wrobel's prior felonies as aggravators and due to the gravity, nature, and number of Wrobel's prior offenses, we cannot say that Wrobel had a limited criminal history such that the imposition of the maximum sentence on each of the counts of sexual misconduct with a minor or his total aggregate sentence of thirty years was inappropriate.

### B. Mental Illness

Regarding Wrobel's assertion that his sentence is inappropriate in light of his character because his mental illnesses should be taken into account, nothing in the record indicates that Wrobel failed to realize his actions were wrong at the time of his offenses. Rather, the record only establishes that Wrobel has difficulty acknowledging his own fault or accepting the consequences for his behavior after-the-fact, which Wrobel's own counsel characterized as a "defense mechanism" in Wrobel's sentencing hearing. Tr. p. 26–27. Thus, the specifics relating to Wrobel's reduced mental faculties as evidenced in the record have failed to convince us that they are so significant that his sentence is inappropriate.

## C. Acceptance of Responsibility

Similarly, Wrobel's assertion that his sentence in inappropriate in light of his character because he "accepted responsibility for his action in the case by pleading guilty" also fails. Appellant's Br. p. 6. Generally, a plea of guilty "demonstrates a defendant's acceptance of responsibility for the crime and at least partially confirms the mitigating evidence regarding his character." Cotto v. State, 829 N.E.2d 520, 525 (Ind. 2005). However, "a guilty plea is not automatically a significant mitigating factor." Sensback v. State, 720 N.E.2d 1160, 1165 (Ind. 1995). Rather, "the significance of a guilty plea as a mitigating factor varies from case to case." Anglemyer v. State, 875 N.E.2d 218, 221 (Ind. 2007) (on rehearing) (citing Francis v. State, 817 N.E.2d 235, 237 n.2 (Ind. 2004)). A guilty plea may be deemed insignificant as a mitigating factor "when it does not demonstrate the defendant's acceptance of responsibility or when the

13

defendant receives a substantial benefit in return for the plea." Id. (internal citations omitted).

Here, the evidence does not establish that Wrobel's guilty plea was demonstrative of his acceptance of responsibility. In fact, the record suggests that not only did Wrobel attempt to excuse his actions by claiming not to remember the incidents, but he accused S.P. of being the aggressor and attempted to portray himself as the victim. Appellant's App. p. 50–51.

Furthermore, it appears that Wrobel may have received a substantial benefit from entering into the plea agreement. First, the State agreed to dismiss the third count of sexual misconduct with a minor. Id. at 12. Second, although Wrobel received the maximum sentences for the two remaining counts of sexual misconduct with a minor, the plea agreement was written such that he necessarily would serve those sentences concurrently. Id. at 11. Finally, pursuant to the plea agreement, Wrobel could receive only the minimum sentence enhancement for the habitual offender finding. Id. Absent the plea agreement, Wrobel could have received up to a thirty-year sentence enhancement. I.C. § 35-50-28-8(h).

Because we cannot say that Wrobel's guilty plea in fact showed an acceptance for his actions and because the plea may have been merely a pragmatic move due to the benefit received by Wrobel under the agreement, we are not convinced that Wrobel demonstrated an acceptance of responsibility such that his sentence is inappropriate in light of his character.

14

In sum, Wrobel has failed to convince us that his sentence is inappropriate because of his alleged limited criminal history, mental illness, or acceptance of responsibility. Indeed, based on our review of the nature of Wrobel's offenses and his character, we cannot say that his sentence is inappropriate. Accordingly, we decline to revise his sentence.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.